1    Michael A. Nicodema (*pro hac vice*)
    GREENBERG TRAURIG, LLP
2    200 Park Avenue
    New York, New York 10166
3    Telephone (212) 801-2100
    Facsimile (212) 688-2449

4

5    Jon E. Hokanson (State Bar #118829)
    Josephine Brosas (State Bar # 239342)
    LEWIS BRISBOIS BISGAARD & SMITH LLP
6    221 N. Figueroa Street, Suite 1200
    Los Angeles, CA 90012
7    Telephone (213) 680-5050
    Facsimile (213) 250-7900
8    Attorneys for Plaintiffs ASPEX EYEWEAR, INC, et al.

9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13   ASPEX EYEWEAR, INC., MANHATTAN DESIGN STUDIO, INC., CONTOUR OPTIK, INC., and ASAHI OPTICAL CO., LTD., | Case No. CV 01-10396 MMM (CWx) |
| 15 | The Hon. Margaret M. Morrow Courtroom 780 (Roybal) |
| 16       Plaintiffs, | |
| 17       v. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR INFRINGEMENT OF U.S. PATENT NO. 6,109,747** |
| 18   MIRACLE OPTICS, INC., AND VIVA OPTIQUE, INC. | |
| 19       Defendants. | Date:     July 13, 2009 |
| 20 | Time:    10:00 a.m. |
| | Crtrm:   780 (Roybal) |

21

22

23

24

25

26

27

28



4830-6604-3395.1

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................1

II.   BACKGROUND FACTS.......................................................................2

    A.   The '747 Patent's Chain of Title – Contour Is And Has Always Been The Sole Owner Of The Entire Right, Title And Interest..............2

    B.   Chic's March 26, 1998 License Agreement With Aspex ......................2

    C.   Contour's March 20, 2001 License With Chic ....................................3

    D.   Chic's April 5, 2001 Agreement With Aspex......................................4

    E.   The Intention Of Contour, Chic And Aspex And Their Course Of Dealing Respecting Exclusive Rights Under The '747 Patent .............5

        1.   Chic and Aspex's Intended That Any Intellectual Property Rights Conveyed To Chic Flow Through To Aspex ..................5

        2.   Contour's Intent To Transfer To Chic The Exclusive Right To Practice The '747 Patent And Exclude Others From Doing So ........................................................................................7

        3.   The Course of Dealing Between the Parties Has Always Been Consistent With The Parties' Intentions...........................8

    F.   Procedural History...............................................................................10

        1.   The Complaint, Answer, and Counterclaims...............................10

        2.   Addition of Viva Optique, Inc. As A Named Defendant ..........11

        3.   Motions For Summary Judgment ...............................................11

        4.   Miracle's Motion To Dismiss Plaintiffs' '747 Patent Action And The Federal Circuit's Mandate ...............................11

        5.   Related Civil Actions Pending In This District .........................12

III.  CONTOUR, THE SOLE PATENT OWNER, HAS STANDING TO SUE IN ITS OWN NAME FOR INFRINGEMENT OF THE '747 PATENT ..............................................................................................12

IV.  ASPEX HAS CO-PLAINTIFF STANDING TO SUE BECAUSE IT WAS AN EXCLUSIVE LICENSEE AT THE TIME OF THE FILING OF THE COMPLAINT__ .................................................................14

V.   ASSUMING *ARGUENDO* THAT CHIC IS A NECESSARY PARTY, CHIC'S JOINDER IS FEASIBLE AND CHIC IS THEREFORE NOT

4848-5615-9491.1

i

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR INFRINGEMENT OF U.S. PATENT NO. 6,109,747

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1        INDISPENSABLE ...................................................................................19

2        A.    Legal Standard For Joinder Of A Necessary Party Under Rule 19
3              (a)...........................................................................................................20

4        B.    Chic Is Not A "Necessary and Indispensable" Party, But
              Nevertheless, Its Joinder Is Feasible Because It Consents To
5              Personal Jurisdiction.............................................................................21

6        C.    There Is No Prejudice To Viva Or Miracle..........................................23

7  VI.   CONSOLIDATION OF THE PRESENT CASE WITH THE '096
        ACTION MOOTS ALL THE ISSUES RAISED BY VIVA ..........................24

8  VII.  CONCLUSION.................................................................................................25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



4848-5615-9491.1                                    ii

1

## <u>TABLE OF AUTHORITIES</u>

2

### FEDERAL CASES

3

4 *101 West 136th Street Realty Corp. v. Secretary of United States Department*
    *of Housing & Urban Development*, 1988 U.S.Dist. LEXIS 12991 ..............22

5

6 *Aspex Eyewear, et al v. Miracle Optics, Inc.,*
    434 F.3d 1336 (Fed. Cir. 2006) (Appeal No. 04-1265)3, 4,12, 13, 14, 18, 19, 24

7

8 *Baltimore & Ohio R.R. v. United States*
    261 U.S. 592, 67 L.Ed. 816, [43 S.Ct. 425] ..................................................15

9

10 *DDB Techs., LLC v. MLB Advanced Media, LP*
    517 F.3d 1284 ........................................................................................19

11

12 *Diodem, LLC v. Lumenis Inc*
    2005 U.S.Dist. LEXIS 46865 ...............................................................22

13

14 *EEOC v. Peabody W. Coal Co.,*
    400 F.3d 774 ................................................................................20, 21, 24

15

16 *Enzo APA & Sun., Inc. v. Geapag A.G.*
    134 F.3d 1090 ........................................................................................13

17

18 *Independent Wireless Telegraph Co. v. Radio Corp. of America*
    269 U.S. 459 ...........................................................................................19

19

20 *Independent Wireless Telegraph Co. v. Radio Corp. of America*
    269 U.S. 459, 46 S.Ct. 166, [70 L.Ed. 357, [1926 Dec.Commr.Pat.
    294] .....................................................................................................20

21

22 *McLaughlin v. International Association of Machinists & Aerospace Workers*
    847 F.2d 620 ....................................................................................21, 22

23

24 *Mentor H/S, Inc. v. Medical Device Alliance, Inc.,*
    244 F.3d 1365 ................................................................................23, 24

25

26 *Morrow v. Microsoft Corp.*
    499 F.3d 1332 ......................................................................................6, 7, 13

27

28



*Propat International Corp. v. Rpost, Inc.*
  473 F.3d 1187............................................................................................19

*Rite-Hite Corp. v. Kelley Co.,*
  56 F.3d 1538............................................................................................17

*Schwarz Pharma, Inc. v. Paddock Laboratoriess, Inc.,*
  504 F.3d 1371............................................................................................19

*Textile Products v. Mead Corp.,*
  134 F.3d 1481............................................................................................16

*Waymark Corp. v. Porta Systems Corp.*
  334 F.3d 1358............................................................................................14

*Weinar v. Rollform, Inc.*
  744 F.2d 797 (Fed. Cir. 1984), *cert. denied,* 470 U.S. 1084 (1985).............14

*Yellowstone County v. Pease,*
  96 F.3d 1169............................................................................................21

### DOCKETED CASES

*Aspex Eyewear, Inc. and Contour Optik, Inc. v. E'Lite Optik, Inc.,*
  Appeal No. 04-1292 ..................................................................................3

*Aspex Eyewear, Inc. v. Cheuk Ho Optical International, Ltd.,*
  Case No. 00-CV-02389-RMB-HBP ..........................................................23

### FEDERAL STATUTES

35 U.S.C. §100 ......................................................................................13, 11, 23

35 U.S.C. §101 ............................................................................................11

35 U.S.C. §102 ............................................................................................11

35 U.S.C. §281 ............................................................................................13

35 U.S.C. §284 ............................................................................................23

Fed. R. Civ. P. 19(a)......................................................................................21


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4848-5615-9491.1

iv

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR
INFRINGEMENT OF U.S. PATENT NO. 6,109,747

1   Pursuant to the Court's Minute Order of April 20, 2009 ("Order"), plaintiffs

2   ASPEX  EYEWEAR,  INC.  ("Aspex")  and  CONTOUR  OPTIK,  INC.

3   ("Contour")(collectively, "Plaintiffs") hereby submit their Opposition to defendant

4   MIRACLE OPTICS, INC. and VIVA OPTIQUE, INC.'s (collectively "Defendants" or

5   "Viva") Motion to Dismiss Plaintiffs' Claims for Infringement of U.S. Patent No.

6   6,109,747 ("the '747 patent").

7   **I.    INTRODUCTION**

8   Faced with a partial summary judgment order by this Court that they infringe the

9   '747 patent, Defendants now seek to have the entire case dismissed on the ground that

10   non-party Chic Optic, Inc. ("Chic") is a necessary and indispensable party, despite the

11   uncontestable fact that the patentee, Contour Optik, Inc. ("Contour"), has been a party

12   plaintiff from the time of filing of the complaint.  As owner of the entire right, title and

13   interest in and to the '747 patent, Contour has standing to prosecute this case in its own

14   name, without joinder of any other party plaintiff, and is therefore the only necessary

15   party plaintiff.  Defendants Motion should be denied for this reason alone.

16   Further, in seeking dismissal of the entire case, Defendants erroneously rely on

17   prior court interpretations of certain written license agreements among the non-party

18   Chic and the party plaintiffs Contour and Aspex Eyewear, Inc. ("Aspex") to attempt to

19   prove the illogical and false proposition that because Aspex was not an exclusive

20   licensee of the '747 patent by the terms of those *written* agreements, it necessarily

21   follows that Aspex cannot be an exclusive licensee.   However, as expressly held by

22   the Federal Circuit, Aspex could have co-plaintiff standing under the '747 patent as an

23   exclusive licensee through an implied sub-license from Chic.  This is exactly what will

24   be shown below--*i.e.*, that at the time of filing the complaint, Aspex was a proper party

25   co-plaintiff because it at minimum it held an implied exclusive sub-license under the

26   '747 patent from by Chic, as evidenced by a clear and unmistakable course of conduct

27   and close business relationship among and between Contour, Chic and Aspex over

28   several years.  Nothing in the written license agreements, nothing in the prior court

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   interpretations of the agreements, nothing in the prior evidence filed in this or any other

2   case, and nothing in the course of conduct among and between Contour, Chic and

3   Aspex is to the contrary.

4        For these reasons, as more fully discussed below, we respectfully submit that the

5   Defendants' motion to dismiss the Plaintiffs' infringement claims should be denied.

6   ## II.   BACKGROUND FACTS

7   ### A.   The '747 Patent's Chain of Title – Contour Is And Has Always

8   ### Been The Sole Owner Of The Entire Right, Title And Interest

9        On April 28, 1997, inventor David Chao filed an application for patent on

10   magnetic eyewear for glasses, and on August 29, 2000, the United States Patent and

11   Trademark Office ("PTO" or "Patent Office") issued that application as the '747 patent.

12   See Exhibit 1 to the Declaration of Josephine Brosas ("Brosas Decl.").

13        Prior to issuance of the '747 patent, Mr. Chao assigned in writing the entire right,

14   title, and interest in the '747 patent to Contour.  See Declaration of David Chao ("Chao

15   Decl. I")[1] ¶4, Exh. A.  This assignment was subsequently recorded with the Patent

16   Office. *Id.*  Contour has never reassigned any of its entire right, title, and interest in the

17   '747 patent to any person or entity. *Id.* at ¶¶3-4.

18   ### B.   Chic's March 26, 1998 License Agreement With Aspex

19        On March 26, 1998, Chic and Aspex entered into a license agreement relating to

20   magnetic eyewear for eyeglasses ("the March 26, 1998 Chic-Aspex Agreement"). *See*

21   Declaration of Nonu Ifergan ("Ifergan Decl. I")[2] ¶¶ 6, 7, Exh. A.

22

23       [1] "Chao Decl. I" refers to the Declaration of David Chao and all exhibits thereto,

24   submitted in Opposition to Defendants' Rule 12(h)(3) Motion in Limine Re:
     Jurisdiction Over the '747 Patent Claims and Plaintiffs' Standing to Sue And Defend

25   the '747 Patent, filed on December 16, 2003 (DE # 253).  The "Chao Decl. I" is

26   attached as Exhibit 2 to the Brosas Decl. which has been filed under seal.

27       [2] "Ifergan Decl. I" refers to the Declaration of Nonu Ifergan and all exhibits thereto,
     submitted in Opposition to Defendants' Rule 12(h)(3) Motion in Limine (DE # 252)

28   (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4848-5615-9491.1

2

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR
INFRINGEMENT OF U.S. PATENT NO. 6,109,747

Under the March 26, 1998 Chic-Aspex Agreement, Chic intended to license all its present and prospective rights under magnetic eyewear patents to Aspex.   The purpose of this Agreement was to immediately sublicense to Aspex any U.S. intellectual property rights acquired by Chic, as of the date such rights were acquired. Ifergan Decl. I, ¶6.   On a recent appeal in analyzing the relevant language of this Agreement, the Federal Circuit found that the March 26, 1998 Chic-Aspex Agreement did not apply to future-acquired patents. *Aspex Eyewear, Inc. et al. v.  and  v. E'Lite Optik, Inc.,* 127 Fed.Appx. 493, 2005 WL 681904 (Fed. Cir. 2005).   In light of this decision, Aspex does not here argue that it received a *written* exclusive license to the '747 patent under that agreement[3].

### C.     Contour's March 20, 2001 License With Chic[4]

On March 20, 2001, Contour and Chic entered into a "Distribution and License Agreement" under the '747 patent ("the March 20, 2001 Contour-Chic Agreement"). Chao Decl. I, Exh. B.   By its terms, Contour expressly granted Chic an exclusive license in the United States to "make, use, import, sell distribute and practice frames covered by the claims" of the '747 Patent. *Id*. at ¶4.1.   However, as evidenced by the

---

The "Ifergan Decl. I" is attached as Exhibit 3 to the Brosas Decl. which has been filed under seal.

[3] While the Federal Circuit's decision precludes the argument that the March 26, 1998 Agreement did not expressly grant any prospective rights it is still none the less relevant to illustrate the course of dealings between Aspex and Chic, e.g., that all U.S. patent rights acquired by Chic were always transferred to Aspex.   Rather, as will be shown below, Aspex held an implied exclusive license to exclude others from practicing the '747 patented invention at the time the original complaint was filed and therefore had standing to be joined as a party in this case.

[4] According to the Federal Circuit, "the Contour/Chic agreement did not constitute a transfer from Contour to Chic of all substantial rights to the '747 patent, and hence it was not an assignment." *Aspex Eyewear, Inc, et al. v. Miracle Optics, Inc. and Viva Optique, Inc.,* 434 F.3d 1336, 1341 (Fed. Cir. 2006).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4848-5615-9491.1
3
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR INFRINGEMENT OF U.S. PATENT NO. 6,109,747

1  testimony of both parties to that transaction, Contour and Chic both intended and

2  understood that written language to also include the exclusive right to exclude others

3  from practicing the '747 patent. See, Chao Decl. II[5] at ¶¶6-9; *See* Declaration of Nonu

4  Ifergan I at ¶¶6-8.

5      The March 20, 2001 Agreement also granted Chic the right to sublicense its

6  exclusive rights, *viz.*, "the right to transfer all substantial rights in the form of exclusive

7  sublicenses to sell, make, use, import, distribute, [and] practice Frames in the territory

8  to the exclusion of others consistent with this Agreement". *Id.* at ¶4.4.

9      Defendants' incorrectly assert that the "1998 Agreement" (ostensibly referring to

10  the "March 26, 1998 Chic-Aspex Agreement") was specifically superseded by the

11  integration clause in the March 20, 2001 Contour-Chic Agreement. *See* Motion p. 7,

12  lns. 1-10. However, the "1998 Agreement" that was superseded by the March 20, 2001

13  Contour-Chic Agreement was <u>not</u> the March 26, 1998 Chic-Aspex Agreement; but

14  rather was the April 7, 1998 Agreement between Contour and Chic, an agreement not at

15  issue herein. *See* Chao Decl. I, Exh. B, ¶1.1.

16      **D.   <u>Chic's April 5, 2001 Agreement With Aspex</u>**

17      On April 5, 2001, Chic entered into another agreement with Aspex,

18  memorializing and confirming the prior transfer from Chic to Aspex of Chic's

19  exclusive license rights under the '747 patent as of the date such rights were acquired

20  by Chic. See Ifergan Decl. I, Exh. C.

21      The April 5, 2001 Chic-Aspex Agreement contains the following language:

22      Whereas, ***immediately upon entering into the Licensor's [Chic's]***
23      ***Agreements,*** Licensor [Chic] vested in Licensee [Aspex] its rights under
        the Licensor's Agreements [relating to '747 patent rights] for any and all
24      rights in the Licensed Patent [the '747 patent], and

25      Whereas, Licensee [Aspex] and Licensor [Chic] are desirous of
26

27  _____
    [5] "Chao Decl. II" is the second declaration of David Chao being submitted herewith.

28



1
2

> ***memorializing such agreement***, vesting in the Licensee the rights of the
> Licensor under the Licensor's Agreements.

3  Ifergan Decl. I, Exh. C., page 1.  Thus, the previous implied agreement of Chic and

4  Aspex was memorialized in the April 5, 2001 Chic-Aspex Agreement, which confirmed

5  that Chic's exclusive right to practice the invention and exclude others from making,

6  using, importing, selling, distributing, and practicing in the United States frames

7  covered by the claims of the '747 patent had been transferred to Aspex *immediately* as

8  of March 20, 2001 (the effective date of the March 20, 2001 Contour-Chic Agreement).

9      **E.**    **The Intention Of Contour, Chic And Aspex And Their Course Of**

10              **Dealing Respecting Exclusive Rights Under The '747 Patent**

11          **1.**    **Chic and Aspex's Intended That Any Intellectual Property**

12              **Rights Conveyed To Chic Flow Through To Aspex**

13        Nonu Ifergan is the President of Aspex and has been its president since its

14  inception. Ifegan Decl., ¶1.  Aspex is a Delaware corporation located in Florida. *Id.*

15        Mr. Ifergan is also the President of Chic. *Id.* at ¶2.  Chic is Aspex's sister

16  company and are both commoly owned by the Ifergan Trust.  *Id.*  As the president of

17  Chic, Mr. Ifergan is responsible for negotiating and executing any license agreements

18  or purchases relating to Chic.  Mr. Ifergan has been the president of Chic since its

19  creation as a company. *Id.*

20        Since 1993, Aspex has always operated as the exclusive distributor of Chic in the

21  United States, and has been responsible for enforcing all of Chic's intellectual property

22  rights in the U.S.  *Id.*  at ¶3.  Since 1993, it has always been Mr. Ifergan's practice and

23  intention, as president of both Chic and Aspex, to convey and transfer to Aspex any

24  intellectual property rights in the United States acquired by Chic. *Id.*

25        It was Mr. Ifergan's intention and understanding that the March 26, 1998 Chic-

26  Aspex Agreement grant an exclusive license from Chic to Aspex, of all past and present

27  rights which Chic had acquired as of its March 26, 1998 Effective Date  – as well as

28  any patent rights relating to magnetic eyewear which Chic might acquire in the future.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    *Id.* at ¶¶6-7.   The parties have always acted consistently with that intention. *Id*.

2          It was and always has been Mr. Ifergan's intention as the President of Chic to

3    transfer Chic's exclusive license rights in the '747 patent to Aspex *immediately* after

4    acquiring those rights from Contour.   And, indeed, these exclusive rights were

5    immediately transferred to Aspex as soon as he signed the March 20, 2001 Contour-

6    Chic Agreement. *Id*.   Defendants can point to no action taken by any party that is

7    inconsistent with this agreement and course of dealing between Chic and Aspex.

8          Mr. Ifergan's intentions and understandings regarding the what Contour granted

9    Chic on March 20, 2001 -- the exclusive right to "make, use, import, sell, distribute,

10   and practice the frames covered by the claims in the '747 patent to the exclusion of all

11   others"   and the exclusive right to exclude others from making, using, importing,

12   selling, distributing, and practicing in the United States frames covered by the claims in

13   the '747 patent, are expressly set forth in his declaration.  *Id*. at ¶8.

14         Consistent with Mr. Ifergan's intentions and understanding,  the previous implied

15   agreement of Chic and Aspex was memorialized in the April 5, 2001 Chic-Aspex

16   Agreement, confirming that Chic's exclusive right to practice the invention and exclude

17   others from making, using, importing, selling, distributing, and practicing in the United

18   States frames covered by the claims in the '747 patent had been transferred to Aspex

19   *immediately* as of the effective date of the March 20, 2001 Contour-Chic Agreement.

20         In other words, the April 5, 2001 agreement confirms what the parties had

21   already impliedly agreed to and carried out *before* the effective date of that agreement--

22   *i.e.*, that  Aspex would have the exclusive right to practice the invention of the '747

23   patent and to exclude others from practicing the invention.   As the grantee of such

24   exclusionary rights, Aspex is injured by any party that makes, uses, sells, offers to sell,

25   or imports the patented invention.  *See Morrow v. Microsoft Corp.,* 499 F.3d 1332,

26   1340 (Fed. Cir. 2007) ("A party such as IPD that has a right to exclude others from

27   making, using, and selling an invention described in the claims of a patent is

28   constitutionally injured by another entity that makes, uses, or sells the invention.").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

2.      **Contour's Intent To Transfer To Chic The Exclusive Right To Practice The '747 Patent And Exclude Others From Doing So**

Mr. David Chao is the Director of International Sales for Contour Optik, Inc. See Chao Decl. I ¶1.  Contour is a Taiwanese corporation in the business of designing, manufacturing, and marketing eyewear throughout the world including primary eyeglass frames with magnetic "clip-on" sunglasses. *Id.* at ¶2.  He has been employed by Contour since 1989 and has been its Director of International Sales since 1996.  *Id.*

Mr. Chao is the sole inventor of the eyewear product described and claimed in the '747 patent.  He assigned the entire right, title and interest in and to Contour, who remains the sole owner of the '747 patent. *Id.* at ¶3.

Consistent with Mr. Ifergan's intention, Mr. Chao also intended that the March 20, 2001 Contour/Chic license agreement, which granted Chic an exclusive license in the United States to "make, use, import, sell, distribute, and practice the frames covered by the claims" of the '747 patent, also grant Chic the right to sublicense its exclusive rights under the '747 patent.  See Chao Decl. II, ¶¶3-9.  Furthermore, Mr. Chao intended to transfer to Chic the exclusive right to make, use, import, sell, distribute, and practice the frames covered by the claims in the '747 patent to the exclusion of all others, and the exclusive right to exclude others from doing so.  *Id.*

In further support of the above intention of the parties, the March 20, 2001 license agreement expressly gave Chic the right to sublicense its exclusive rights under the '747 patent to only an authorized "Affiliate."  Chao Decl. I, Exh. B, ¶¶4.4, 19.1. An "Affiliate" company is defined in paragraph 2.1 as "an entity controlling, controlled by or under common control with, the First Entity [Chic], such control being exercised through the ownership or control, directly or indirectly, of more than "an entity controlling, controlled by or under common control with, the First Entity [Chic], such control being exercised through the ownership or control, directly or indirectly, of more than fifty percent (50%) of all of the voting power of the shares entitled to vote for the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  election of directors or other governing entity".  Chao Decl. I, Exh. B.   However,
2  unless Chic transfers its rights to an "Affiliate" company, Chic cannot transfer any
3  rights without Contour's prior written consent. *Id.* at ¶19.1.

4       Thus, the March 20, 2001 Contour/Chic agreement *contemplated* that Chic may
5  transfer its exclusive rights to an "Affiliate" company, which in this case was Chic's
6  sister company, Aspex.  This is what the parties intended and actually what took place
7  on the March 20, 2001 effective date – the exclusive rights granted by Contour to Chic
8  under the '747 patent was immediately transferred by Chic to Aspex.  The April 5,
9  2001 Chic-Aspex Agreement only confirms and memorializes what Chic and Aspex
10 have already agreed to before the April 5, 2001 effective date.

12      Below is an illustration of the various agreements by the parties:



24      **3.    The Course of Dealing Between the Parties Has Always Been**
25            **Consistent With The Parties' Intentions**
26      Before and throughout the litigation, the conduct of Contour, Chic and Aspex
27 has always been consistent with what they intended, and they have always operated in
28 conformity with their intentions and understanding.  Defendants have not and can not

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4848-5615-9491.1                                           8

1   point to any evidence or action by the parties that is inconsistent with the grant of an

2   exclusive license from Contour to Chic, then from Chic to Aspex.

3       At all times during the history of the relationship and course of dealing between

4   Contour, Chic, and Aspex, these companies have always acted as if the March 20, 2001

5   Contour-Chic Agreement expressly provided Chic with the exclusive right to practice

6   the '747 patent to the exclusion of others and with the exclusive right to exclude others

7   from practicing the patented invention.  Ifergan Decl. I, ¶8; Chao Decl. II, ¶11.  These

8   companies have always acted as if Chic's exclusive right to practice the invention and

9   the exclusive right to exclude others from doing so were *immediately transferred* to

10  Aspex when Chic acquired those rights from Contour on March 20, 2001. Ifergan Decl.

11  I, ¶¶3-7.

12      Furthermore, in *Aspex Eyewear, Inc. et al. v. Altair Eyewear, Inc.,* 288 Fed.

13  Appx. 697 (Fed. Cir. 2008), a case involving Contour, Chic and Aspex, and other

14  Contour-owned magnetic eyewear patents, the Federal Circuit considered the evidence

15  of an implied Chic-Aspex license and "agree[d] with the following evidence" as

16  "sufficient to establish a genuinely disputed issue of material fact as to whether Aspex

17  had an oral or implied exclusive license":

18      • Chic and Aspex are both owned by members of the same family

19          and have a close business relationship.

20      • Aspex has operated as an exclusive licensee, distributing products

21          made pursuant to the patents-in-suit and seeking to enforce its

22          rights under the patents.

23      • Thierry Ifergan, a member of the family that owns both Chic and

24          Aspex, testified that oral and implied agreements exist and grant

25          Aspex an exclusive license in the patents-in-suit.

26  *See* 288 Fed. Appx. 697, 706.  The Federal Circuit also found that "in addition to the

27  above, Nonu Ifergan, another member of the family that owned both Chic and Aspex,

28  testified that both companies believed the written license agreement conferred an

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  exclusive license to the patents-in-suit[6] **and operated consistent with that**

2  **understanding.**" *Id.* (emphasis added).  The same is true regarding the '747 patent.

3       Evidence of the parties' course of dealing and the way they have conducted

4  business throughout the years, regardless of which Contour-owned patent rights were at

5  issue, was also considered favorably by this Court during the damages trial in

6  *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, CV 02-01087 VAP-CWx.  *See* Order

7  Denying Counterclaim Defendant's Motions for Judgment as a Matter of Law, For New

8  Trial, and For Remittitur, p. 18, lns. 1-13, Exh. 4 to Brosas Decl. ("Contour presented

9  testimony that it granted an exclusive license for its '207 patent to Chic Optic, and that

10  when the '207 patent was reissued as the '545 patent, Contour and Chic treated the

11  agreement as a continuing license of the '545 patent.").

12      **F.**    **Procedural History**

13        **1.**    **The Complaint, Answer, and Counterclaims**

14       Plaintiffs Aspex and Contour commenced this action on March 28, 2001 by filing

15  their original Complaint against Miracle in the United States District Court for the

16  Southern District of New York ("the New York action").  The original Complaint also

17  named as plaintiffs two additional entities, Ira Lerner, Inc. d/b/a Manhattan Design

18  Studio, Inc. ("MDS") and Asahi Optical Co., Ltd. ("Asahi"), but only on a claim of

19  infringement of U.S. Patent No. 5,568,207 ("the '207 patent").  Following reissue

20  proceedings in the USPTO, the '207 Patent was reissued as the '545 patent.  The New

21  York action was transferred to this Court upon Miracle's motion.

22       Plaintiffs' original Complaint alleged Miracle's willful infringement of

23

24

25      [6] While the *Altair* case did not involve the '747 patent, the findings of the Federal

26  Circuit in that case are relevant to the course of dealing between the parties and their

27  intentions, and to show that they have always operated consistently with their intentions

that an exclusive license to exclude others from practicing any of the Contour patents

be transferred to Aspex, regardless of which patents and agreements are involved.

28



4848-5615-9491.1

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR
INFRINGEMENT OF U.S. PATENT NO. 6,109,747

1  both the '207 patent and the '747 patent.  On April 16, 2002, Plaintiffs filed a First
2  Amended Complaint, in which allegations of infringement of the '207 patent were
3  replaced with allegations of infringement of the '545 reissue patent.   Plaintiffs'
4  allegations concerning Miracle's infringement of the '747 patent were left unchanged
5  from those set forth in the original Complaint. *See* DE #39.

6  ## 2.   Addition of Viva Optique, Inc. As A Named Defendant

7  In 2002, Miracle became a wholly owned subsidiary of Viva through purchase of
8  the assets and liabilities of Miracle.  Since then, Viva has continued to sell the accused
9  magnetic clip-on eyewear products.  By order of December 4, 2003, this Court granted
10  Plaintiffs' ex parte application to add Viva as a named defendant and found that
11  Miracle transferred its interest in the litigation to Viva. *See* DE #249.

12  ## 3.   Motions For Summary Judgment

13  On August 8, 2003, this Court granted Miracle's motion for partial summary
14  judgment that its accused product did not infringe the '545 patent.  Plaintiffs appealed
15  this ruling to the Federal Circuit.  On March 2, 2006, the Federal Circuit vacated and
16  remanded this Court's August 8, 2003 summary judgment order.  *See Aspex Eyewear,*
17  *et al. v. Miracle Optics, Inc.*, 2006 WL 509313 (Fed. Cir. 2006).

18  On September 15, 2003, Plaintiffs filed a Motion for Partial Summary Judgment
19  that Miracle's accused  products literally infringed claim 12 of the '747 patent. *See* DE
20  #136.  By Order of October 29, 2003, this Court granted Plaintiffs' motion. On the
21  same day, this Court issued an Order denying Miracle's motion for summary judgment
22  that claim 12 is invalid for lack of utility under 35 U.S.C. §101, lack of enablement
23  under §112, and for anticipation under 35 U.S.C. §102(a). *See* DE #s 194 and 195.

24  ## 4.   Miracle's Motion To Dismiss Plaintiffs' '747 Patent Action
25  ## And The Federal Circuit's Mandate

26  On January 10, 2006, the Federal Circuit vacated the Court's decision that the
27  Plaintiffs lacked standing to sue for infringement of the '747 patent, and remanded the
28  case to determine, *inter alia*, " ... whether all necessary parties to this action were

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4848-5615-9491.1
11
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR
INFRINGEMENT OF U.S. PATENT NO. 6,109,747

1   joined, or could have been joined."  The Federal Circuit noted the following:

2        In its decision, the district court did not consider whether Aspex was an
3   exclusive licensee with the right to sue, *either through an implied license*
    *or the later Chic/Aspex agreement.*  The court determined only that
4   Aspex was not an assignee of the '747 patent when the original complaint
5   was filed.  Once the court determined that Contour was not the patentee at
    the time the complaint was filed, the only way a dismissal could have
6   been avoided was if Chic had transferred to Aspex all of its rights under
7   the patent through a written agreement prior to the filing of the complaint,
    which the court found had not occurred.  However, now that we have
8   concluded that Contour was the effective patentee when the complaint
9   was filed, whether Aspex or Chic was an exclusive licensee at that time is
    an issue that must be decided.

10

11  *Aspex Eyewear, et al v. Miracle Optics, Inc.*, 434 F.3d 1336, 1344 (Fed. Cir. 2006)

12  (Appeal No. 04-1265)(emphasis added).  At the time this Court dismissed the '747

13  patent action for lack of standing, all discovery had been closed, and the case was

14  proceeding toward a February 24, 2004 trial date.

15             **5.      Related Civil Actions Pending In This District**

16        Two related civil actions are pending in this Court:  *Aspex Eyewear, Inc. et al. v.*

17  *Miracle Optics, Inc. et al*., Case No. CV 04-01096 MMM-CWx ("the '096 action"),

18  and *Miracle Optics, Inc. v. Aspex Eyewear, Inc.,* Case No. CV 04-02881 MMM-CWx

19  ("the '881 action").  On February 18, 2004, Contour, Aspex and Chic filed the '096

20  action against Miracle and Viva, alleging infringement of the '747 patent.  On March

21  11, 2004, Miracle filed an action against Plaintiffs in California Superior Court alleging

22  malicious prosecution of patent infringement and other business torts.  On April 26,

23  2004, the Superior Court action was removed to this Court, becoming the '881 action.

24  **III.   CONTOUR, THE SOLE PATENT OWNER, HAS STANDING TO  SUE**
25  **IN ITS OWN NAME FOR INFRINGEMENT OF THE '747 PATENT**

26        Viva contends that the claims for infringement must be dismissed because when

27  the case was commenced in 2001, the Complaint failed to name Chic as a plaintiff. *See*

28  Motion at p.1.  Viva is wrong, because Contour, the undisputed patent owner, was a

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4848-5615-9491.1                                    12
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR
INFRINGEMENT OF U.S. PATENT NO. 6,109,747

1    plaintiff on the day the action was filed, and had standing to sue in its own name.

2        Standing to sue for infringement stems from the Patent Act, which provides that

3    "[a] patentee shall have remedy by civil action for infringements of his patent." 35

4    U.S.C. §281.  As defined in §100(d), "patentee" includes not only the patentee to whom

5    the patent was issued but also "the successors in title to the patentee." 35 U.S.C.

6    §100(d).   Section 100(d) has been interpreted to require that a suit for infringement

7    "must ordinarily be brought by a party holding legal title to the patent." *Enzo APA &*

8    *Sun., Inc. v. Geapag A.G.,* 134 F.3d 1090, 1093 (Fed. Cir. 1998).

9        The Federal Circuit has held that plaintiffs in patent suits fall into three

10   categories for standing purposes: "those that can sue in their own name alone; those that

11   can sue as long as the patent owner is joined in the suit; and those that cannot even

12   participate as a party to an infringement suit." *Morrow et al. v. Microsoft Corp.,* 499

13   F.3d 1332, 1339 (Fed. Cir. 2007).  In the first category (i.e., those who can sue in their

14   own name alone) are those plaintiffs that hold all legal rights to the patent, including

15   assignees and licensees to whom "all substantial rights to the patent" have been

16   transferred. *Id.* at 1340.  Exclusive licensees who do not have all substantial rights fall

17   into the second category and must join the patent owner as co-plaintiff to satisfy

18   prudential concerns (i.e., to avoid the possibility that the accused infringer could later

19   be sued by the patentee also). *Id.*  Finally, the third category (those who cannot be

20   parties at all) includes those who lack exclusionary rights, i.e., those licensees who are

21   authorized to make, use, and sell the patented product but who have no right to exclude

22   or prevent others from also doing so. *Id.* at 1341.

23       In this case, Contour is in the first category and can sue in its own name alone.  It

24   is undisputed that Contour has never re-assigned any of its entire title, right and interest

25   in the '747 patent to any other person or entity.  In fact, the Federal Circuit has already

26   found that **"Contour was the owner of the '747 patent when the original complaint**

27   **was filed."** *Aspex Eyewear, Inc. et al., v. Miracle Optics, Inc. et al.,* 434 F.3d 1336,

28   1344 (Fed. Cir. 2006) (emphasis added).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   Moreover, the Federal Circuit already determined that **"the lawsuit was**
2   **properly brought in the name of the owner of the patent [Contour]"**.   *Aspex*
3   *Eyewear, Inc. et al. v. Miracle Optics, Inc., et al.,* 434 F.3d at 1344 (emphasis added).
4   Because it is well-settled that Contour, as the patent owner, was and is entitled to bring
5   a civil action for infringement of its '747 patent, this case simply cannot be dismissed
6   for lack of standing and the inquiry should end here.

7   **IV.   ASPEX HAS CO-PLAINTIFF STANDING TO SUE BECAUSE IT WAS**
8   **AN EXCLUSIVE LICENSEE AT THE TIME OF THE FILING OF**
9   **THE COMPLAINT**

10   Aspex was an exclusive licensee by virtue of: (1) an implied exclusive license
11   between Chic and Aspex prior to the filing of the complaint, which was (2)
12   memorialized in writing after the filing of the complaint; and (3) confirmed by the
13   course of dealing between the parties before and after the filing of the complaint; and
14   (4) such course of dealing has always been consistent with the existence of an implied
15   excusive license and the intention of all parties involved.

16   The existence of an implied exclusive agreement between Chic and Aspex is
17   supported by case law.  The Federal Circuit, in providing guidance on the determination
18   of Aspex's exclusive licensee status on remand of this case, has noted that
19   "[d]etermining ***whether there was an implied license between Chic and Aspex*** prior to
20   the filing of the complaint may involve a factual determination."  *Aspex Eyewear, et al*
21   *v. Miracle Optics, Inc.*, 434 F.3d 1336, 1345 (emphasis added).  This is also supported
22   by the Federal Circuit's holding in *Aspex Eyewear, Inc. et al. v.  Altair Eyewear, Inc.,*
23   288 Fed. Appx. at 705, where it held that "[W]e are bound to follow our precedent, and
24   thus we hold that **an exclusive license need not be in writing** for the licensee to have
25   standing if the patentee or assignee is also joined, as Contour was here."(emphasis
26   added); *See, Waymark Corp. v. Porta Systems Corp.*, 334 F.3d 1358, 1364 (Fed. Cir.
27   2003)(stating patent "[l]icenses may be oral.");  *See also, Weinar v. Rollform, Inc.,* 744
28   F.2d 797, 807 (Fed. Cir. 1984), *cert. denied,* 470 U.S. 1084 (1985)(the oral contract

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4848-5615-9491.1                                    14
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR
INFRINGEMENT OF U.S. PATENT NO. 6,109,747

1   granting exclusive right to sell sufficient to confer co-plaintiff standing).

2      Consideration of the parties' intention, understanding, and course of dealing is
3   particularly important in determining the existence of an implied exclusive license, as
4   "[a]n implied-in-fact contract is an agreement 'founded upon a meeting of the minds,
5   which, although not embodied in an express contract, is inferred, as a fact from conduct
6   of the parties showing, in the light of the surrounding circumstances, their tacit
7   understanding.'" *Baltimore & Ohio R.R. v. United States*, 261 U.S. 592, 597, 67 L. Ed.
8   816, 43 S. Ct. 425 (1923).

9      Viva argues that the previously filed declaration of Nonu Ifergan ("Ifergan Decl.
10  I") should not be relied upon.  However, Viva has offered no authority that just because
11  Mr. Ifergan is the president of both related companies, his testimony is inherently
12  unreliable and should be disregarded.  To the contrary, the Central District notes that
13  "as to the common signatory, sharing of officers is "a common business practice and
14  exist[s] in most parent and subsidiary relationships." *Diodem, LLC v. Lumenis Inc.*,
15  2005 U.S. Dist. LEXIS 46865 (C.D. Cal. Sept. 13, 2005), citing *CM Corp. v. Oberer*
16  *Dev. Co.*, 631 F.2d 536, 539 (7th Cir. 1980).  Indeed, companies act through their
17  directors and officers, and here, Mr. Ifergan is both the President of Aspex and the
18  President of Chic, and Aspex and Chic act through him.  It certainly cannot be said that
19  none of his statements are reliable merely because of his dual roles and capacities.

20     Moreover, the declaration of Mr. Ifergan regarding his intentions and
21  understanding in his separate capacities as President of Chic and as President of Aspex,
22  is not the only evidence of an implied license, as Viva suggests.  Specifically, the
23  existence of Aspex's implied exclusive license, is supported  by:

24     • **The Written Agreements: (a) the March 26, 1998 Chic-Aspex**
25  **Agreement** immediately licensing to Aspex any intellectual property rights in the
26  United States acquired by Chic, as of the date such rights were acquired, and granting
27  Aspex the exclusive right to practice the patented invention and the exclusive right to
28  exclude others from practicing the invention. *See* Ifergan Decl. I, Exh. A; **(b) the**



1 **March 20, 2001 Contour-Chic Agreement** granting Chic an exclusive right to
2 practice the invention, the exclusive right to exclude others from practicing the
3 invention[7], and the right to transfer these rights to Chic's affiliate, Aspex. *See* Ifergan
4 Decl. I, Exh. B; Chao Decl. II, ¶¶3-9; (**c) the April 5, 2001 Chic-Aspex Agreement,**
5 memorializing the prior implied agreement between Chic and Aspex and confirming
6 that Chic's exclusive right to practice the invention and exclude others from making,
7 using, importing, selling, distributing, and practicing in the United States frames
8 covered by the claims in the '747 patent has been transferred to Aspex immediately as
9 of March 20, 2001, the effective date of the Contour-Chic Agreement. *See* Ifergan Decl.
10 I, ¶9, Exh. C.

11 • **The Intention and Understanding of Contour's David Chao, and**
12 **Aspex and Chic's Nonu Ifergan:** (a) Mr. Ifergan's intention and practice, as President
13 of both Chic and Aspex, to convey and transfer to Aspex any intellectual property
14 rights in the United States acquired by Chic. *See* Ifergan Decl. I, ¶¶3, 7; (b) Mr. Chao's
15 and Mr. Ifergan's intention and understanding that Chic's exclusive right to practice the
16 invention and exclude others from making, using, importing, selling, distributing, and
17 practicing in the United States frames covered by the claims in the '747 patent (which
18 Contour had granted to it) has been transferred to Aspex when such rights were
19 acquired by Chic from Contour.

20 • **The Relationship and Course of Dealing Between Contour, Chic, and**
21 **Aspex[8]:** At all times during the history of the relationship and course of dealing
22

---

23 [7] "[A]n exclusive license [capable of supporting standing] is a license to practice the
24 invention . . . accompanied by the patent owner's promise that others shall be excluded
25 from practicing it within the field of use wherein the licensee is given leave." *Textile Prods. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998).

26 [8] Even Canadian law, which governs the March 26, 1998 Chic-Aspex
27 Agreement and the April 5, 2001 Agreement (See Ifergan Decl. I, Exh. A at ¶12 and
28 Exh.C at ¶13), recognizes that an agreement may be implied by conduct of the parties
(footnote continued)



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4848-5615-9491.1

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR
INFRINGEMENT OF U.S. PATENT NO. 6,109,747

1  between Contour, Chic, and Aspex, these companies have always acted as if the March

2  20, 2001 Contour-Chic Agreement expressly provided Chic with the exclusive right to

3  practice the invention <u>and</u> with the exclusive right to exclude others from practicing the

4  patented invention, <u>and</u> such right immediately transferred to Aspex when Chic

5  acquired those rights from Contour on March 20, 2001, in conformity with the intention

6  and understanding of the parties. *See* Ifergan Decl. I, ¶¶3,7 and Chao Decl. II, ¶¶3-9.

7          Based on the above, it is clear that Aspex received *all the necessary rights for co-*

8  *plaintiff standing* purposes that can be traced from the patent owner Contour, which

9  was then transferred to Chic, then to Aspex as soon as Chic acquired those rights from

10  Contour.   This is supported by established case law:

11          To be an exclusive licensee for standing purposes, a party must have
           received, not only the right to practice the invention within a given
12          territory, but also the patentee's express or implied promise that others
           shall be excluded from practicing the invention within that territory as
13          well. If the party has not received an express or implied promise of
14          exclusivity under the patent, i. e., the right to exclude others from making,
           using, or selling the patented invention, the party has a "bare license," and
15          has received only the patentee's promise that that party will not be sued for
16          infringement.

17  *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995).

18          Viva contends that it was only as of April 5, 2001 "that Chic formally assign[ed]

19  certain rights it obtained under the March 20, 2001 Contour-Chic license to Aspex."

20  _____

21  "indicat[ing] that they are proceeding on the basis of some legal relation so that the
22  function of the court is merely to find as a fact that relation with its attendant
     obligations and rights which the parties have so indicated by implication but have failed
23  to express." *See Graywood Investments Ltd. v. Ontario Energy Board*, 2005 O.J. 345;
24  2005 O.N. LEXIS 343 at *22, citing *Arding v. Buckton* (1956) 20 W.W.R. 487, 6
     D.L.R. (2d) 586 (British Columbia Court of Appeal); *see also, R. v. Marshall*, 1999 3
25  S.C.R. 456, 471; 1999 S.C.R. LEXIS 370, *27 ("[E]ven in a modern commercial
26  context, extrinsic evidence is available to show that a written document does not
     include all of the terms of an agreement.")(See Brosas Decl. Exhs. 5 and 6).
27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR
INFRINGEMENT OF U.S. PATENT NO. 6,109,747

1   Motion at p. 8, lns. 16-18.  There is no merit to this argument because the April 5, 2001

2   Chic-Aspex Agreement only confirms what Chic and Aspex had already impliedly

3   agreed to before the April 5, 2001 effective date – **that whatever rights are granted to**

4   **Chic by virtue of the March 20, 2001 Agreement flows through to Aspex.**  In fact,

5   Viva itself **admits** that "the only evidence Aspex can rely upon must relate to the April

6   5, 2001 Chic-Aspex Agreement **OR give evidence of an earlier understanding."**

7   Motion at p.10, lns. 10-12 (emphasis added).  Here, as evidenced by the written

8   agreements, intention and understanding of the parties, the history of the relationship

9   and course of dealing between the parties, **there was an earlier understanding** ---

10   Chic's exclusive right to practice the invention and the exclusive right to exclude others

11   from practicing the invention claimed by the '747 patent were immediately transferred

12   to Aspex when Chic acquired those rights from Contour on March 20, 2001.  This

13   earlier understanding gave Aspex co-plaintiff standing to sue for infringement of the

14   '747 patent as of the time the original complaint was filed.

15        Finally, in its motion, Viva cites to the Texas District Court's opinion in the

16   matter of *Aspex Eyewear, Inc. and Contour Optik, Inc. v. E'Lite Optik, Inc.,* 3:00-CV-

17   2010-L ("*E'Lite*"), entered on August 26, 2003, for the proposition that Aspex could

18   not demonstrate that it had any rights to the '747 patent until April 5, 2001.  Viva is

19   wrong not only for the reasons stated above but also because the standing issues in here

20   are not identical to the one in *E'Lite*.  The issue in *E'Lite* was whether Aspex had

21   standing to enforce the '747 patent as of the date of filing that action on September 20,

22   2000  and the *E'Lite* Court held that it did not.  The E'Lite Court did not address and

23   was not asked to address whether Aspex had acquired an implied exclusive license on

24   the '747 patent by virtue of the March 20, 2001 Contour-Chic Agreement.  Thus, the

25   *E'Lite* decision is inapplicable, because here, the March 20, 2001 Contour-Chic

26   Agreement, which vested Aspex with rights on that same day, came into being before

27   the suit against Miracle was filed on March 28, 2001.

28        Accordingly, for all of the above reasons, and in accordance with the Federal

LEWIS
BRISBOIS
BISGARD
& SMITH LLP
ATTORNEYS AT LAW

4848-5615-9491.1

18

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR
INFRINGEMENT OF U.S. PATENT NO. 6,109,747

1   Circuit's recognition that Aspex can be "an exclusive licensee with the right to sue, []
2   *through an implied license"*, (*Aspex Eyewear, Inc.* 434 F.3d at 1344), Plaintiffs
3   respectfully submit that Aspex was an exclusive licensee with the right to sue, and thus
4   had co-plaintiff standing to sue along with Contour when this lawsuit was filed.

5   **V.     ASSUMING *ARGUENDO* THAT CHIC IS A NECESSARY PARTY,**
6   **CHIC'S JOINDER IS FEASIBLE AND CHIC IS THEREFORE NOT**
7   **INDISPENSABLE**

8        As discussed above, because Contour, the undisputed patentee and sole owner of
9   the '747 patent, was a party at the time the original complaint was filed, there is no
10  *other* "necessary and indispensable party." As also shown above, Aspex, not Chic, was
11  the exclusive licensee with the right to sue when the original complaint was filed and
12  certainly by the time the amended complaint was filed on April 9, 2002.

13       While the Federal Circuit in *Aspex Eyewear, Inc.,* 434 F.3d 1345 noted that "[f]or
14  the same policy reasons that a patentee must be joined in any lawsuit involving his or
15  her patent, there <u>must be</u> joinder of <u>any</u> exclusive licensee." (emphasis added), citing to
16  *Independent Wireless Tel. Co. v. Radio Corp. of America*, 269 U.S. 459, 466 (1926),
17  that statement is contrary to the Supreme Court's jurisprudence, and fails to distinguish
18  any of numerous cases that stand for the proposition that exclusive licensee without all
19  substantial rights can be – but are not required to be -- a party to a case when the patent
20  owner is a party.  Plaintiffs believe that this statement is a slip of the pen by the panel,
21  and does not represent controlling law in this area.   Rather, it is the patent owner, its
22  assignee(s), or holder of all substantial rights to the patent who must be joined, and
23  there is no requirement for joinder of "any exclusive licensee".

24       The requirement under *Independent Wireless* is that all co-owners must be
25  parties; not that all exclusive licensees must be parties. *See, e.g., DDB Techs., LLC v.*
26  *MLB Advanced Media, LP,* 517 F.3d 1284, 1288 (Fed. Cir. 2008) ("[A]s a matter of
27  substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an
28  infringement suit."); *see also, Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1193


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4848-5615-9491.1
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR
INFRINGEMENT OF U.S. PATENT NO. 6,109,747

(Fed. Cir. 2007) (noting the necessity of joining a patent owner in an infringement action brought by an exclusive licensee); *see also, Schwarz Pharma, Inc. v. Paddock Labs., Inc.*, 504 F.3d 1371, 1375 (Fed. Cir. 2007):

> The requirement to join the patent owner, and the ability to compel that joinder if necessary, can be traced back to *Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459, 46 S. Ct. 166, 70 L. Ed. 357, 1926 Dec. Comm'r Pat. 294 (1926). The Supreme Court stated in that case: [T]he owner of a patent, who grants to another the exclusive right to make, use, or vend the invention, which does not constitute a statutory assignment, holds the title to the patent in trust for such a licensee, to the extent that he must allow the use of his name as plaintiff in any action brought at the instance of the licensee in law or in equity to obtain damages for the injury to his exclusive right by an infringer, or to enjoin infringement of it. *Id.* at 469. The Court also stated: ***The presence of the owner of the patent as a party is indispensable***, not only to give jurisdiction under the patent laws, but also in most cases to enable the alleged infringer to respond in one action to all claims of infringement for his act, and thus either to defeat all claims in the one action, or by satisfying one adverse decree to bar all subsequent actions. *Id.* at 468.

One of the reasons for requiring joinder of the patent owner discussed by the *Independent Wireless* court was the possibility that the alleged infringer would be subject to multiple actions. There is no such danger here, as Contour, the sole patent owner, and Aspex, the sole exclusive licensee, have been plaintiffs in this infringement action since the filing of the original complaint. Nevertheless, for the sake of argument, if for some reason the Court finds that *Chic* is a "necessary party" in this case that must be joined, Chic *can* be added as a party, negating Defendants' argument that the case must be dismissed because an indispensable party cannot be joined.

## A.   Legal Standard For Joinder Of A Necessary Party Under Rule 19 (a)

Rule 19 provides for the mandatory joinder of parties "needed for a just adjudication," commonly referred to as "necessary" parties. *See EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). Joinder is required under any of three

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4848-5615-9491.1
20
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR
INFRINGEMENT OF U.S. PATENT NO. 6,109,747

circumstances.  First, an absent party is deemed a "necessary party," and must be joined when the court cannot accord "complete relief" to the existing parties without the absent party's participation. Fed. R. Civ. P. 19(a)(1).  Second, joinder will be ordered when an absent party claims an interest in the subject of the existing litigation which may be prejudiced by the outcome of the case. *Id.* 19(a)(2)(i).  Finally, joinder is prescribed when an existing party will be subjected to a substantial risk of incurring multiple or inconsistent obligations if an absent party is not joined.  *Id.* 19(a)(2)(ii). Rule 19's conditions for mandatory joinder are phrased in the disjunctive; thus, joinder is required if *any* of the three conditions is met. *See Yellowstone County v. Pease*, 96 F.3d 1169, 1172 (9th Cir. 1996). Parties determined to be "necessary" under any of Rule 19(a)'s three prongs "must be joined if feasible." *McLaughlin v. International Asso. of Machinists & Aerospace Workers*, 847 F.2d 620, 621 (9th Cir. 1988). "Rule 19(a) sets forth three circumstances in which joinder is *not feasible*: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *Peabody W. Coal Co.*, 400 F.3d at 779.

A motion to dismiss for failure to join an indispensable party under Rule 12 requires a court to undertake "three successive inquiries". *Peabody W. Coal Co.*, 400 F.3d at 779.. First, "the court must determine whether a nonparty should be joined under Rule 19(a)," i.e., whether the absent party is "necessary." *Id.*  Second, if the absentee is deemed a "necessary party," the court must "determine whether it is feasible to order that the absentee be joined." *Id.*  Third, "if joinder is not feasible, the court must determine . . . whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed". *Id.*

## B.   Chic Is Not A "Necessary and Indispensable" Party, But Nevertheless, Its Joinder Is Feasible Because It Consents To Personal Jurisdiction

Here, Viva has presented no evidence: (1) why Chic is needed for just adjudication; or (2) why the court cannot accord "complete relief" to the existing parties

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   without the Chic's participation, or (3) how Chic's claims an interest in the subject of

2   the existing litigation which may be prejudiced by the outcome of the case.  These are

3   requirements that Viva must show under Rule 19 as set forth above.  Viva's only

4   "evidence" is its argument that Chic is Contour's exclusive licensee and that somehow

5   Chic is the only party with standing to recover damages.  See Motion at 13.  However,

6   Viva completely ignores the fact that even though Chic was not a party at the outset, *at*

7   *the very least,* it was confirmed in writing on April 5, 2001 – eight days after the filing

8   of the Complaint, that all of Chic's exclusive rights relating to the '747 patent have

9   been transferred to Aspex.  In fact, Chic did not even acquire any exclusive right on the

10  '747 patent until March 20, 2001 (with such right flowing through to Aspex on the very

11  same day), eight days before the filing.  Simply put, Chic is not a "necessary and

12  indispensable party" because Chic is not a co-owner '747 patent, an assignee, or an

13  exclusive licensee *with all substantial rights* to sue.

14        Nevertheless, should the Court find that Chic is a necessary and indespensible

15  party that must be joined, joinder **is feasible** because Chic has already consented to

16  personal jurisdiction in this litigation.  *See* Ifergan Decl. I, ¶10.  And, because joinder

17  is feasible, Chic "must be joined" – and this **moots** all of Viva's arguments asking the

18  court **to refuse** amendment of the complaint to include Chic as a party.  *See*

19  *McLaughlin v. International Asso. of Machinists & Aerospace Workers*, 847 F.2d 620,

20  621 (9th Cir. 1988)("As a 'necessary party,' BLA II **must be joined** if joinder is

21  'feasible.'") (emphasis added).  "The 'mandatory language of the rule divests the Court

22  of any discretion.'" *Diodem, LLC v. Lumenis Inc.*, 2005 U.S. Dist. LEXIS 46865 (C.D.

23  Cal. Sept. 13, 2005), citing to *101 West 136th Street Realty Corp. v. Secretary of United*

24  *States Dep't of Housing & Urban Dev.*, 1988 U.S. Dist. LEXIS 12991 at *33 (S.D.N.Y.

25  1988)[9].

26

27  _____

28        [9]   With respect to amendment of the complaint, contrary to Viva's arguments,
(footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Furthermore, even if the standard under F.R.C.P. Rule 19 are not met, because Contour is the patentee with standing to enforce the patent, if appropriate the Court may also join Chic under F.R.C.P. Rule 21 to cure any apparent standing deficiency. *Mentor H/S, Inc. v. Med. Device Alliance, Inc.,* 240 F.3d 1016, 1019 (Fed. Cir. 2001); *see also Aspex Eyewear, Inc. et al. v. E'Lite Optik, Inc.* 2002 WL 1751381, *9 (N.D. Tex 2002) (adding Chic as a party to the action as a necessary party).

## C.  There Is No Prejudice To Viva Or Miracle

Viva's argument that it would be prejudiced by the addition of Chic because Chic did not submit an expert report on damages (Motion, footnote 4) or subject itself to discovery (Motion at p. 16, ln. 6), or that there is no party with a sustainable claim for damages,  is without merit.[10]

First, Viva will suffer no prejudice because it has submitted a discovery schedule in each of two joint statements, it <u>can</u> take additional discovery, and no trial date has been set at this point.

Second, Chic licensed its rights under the '747 patent to Aspex, and thus it would not seek damages in addition to, or independently from Aspex, who, as shown above, is the exclusive licensee with co-plaintiff standing to sue.  **Viva's argument also completely ignores the fact that Contour, the patentee, is entitled to injunctive relief and at least a reasonable royalty under 35 U.S.C. §284.**  Indeed, the Federal Circuit in *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1373 (Fed.

---

there is no *undue* delay or *bad* faith on part of the plaintiffs because plaintiffs have in good faith relied upon the fact that Contour was a party at the outset, Aspex as an exclusive licensee had co-plaintiff standing, and the amended complaint pleads facts consistent with the terms of Contour, Chic, and Aspex's agreements.

[10] The case cited by Viva, *Aspex Eyewear, Inc. v. Cheuk Ho Optical International, Ltd.*, Case No. 00-CV-02389-RMB-HBP filed <u>in March 2000</u> in the Southern District of New York, where Chic was added by the parties, was based on a completely different set of facts, and thus has no bearing on the determination here.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4848-5615-9491.1

23

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR INFRINGEMENT OF U.S. PATENT NO. 6,109,747

Cir. 2001), granted joinder because it would not prejudice defendants as the damages claims were not altered by such joinder. Specifically, the Federal Circuit in *Mentor* noted that "the defendants did conduct discovery on Sonique's principals, Parisi and Massengill. Although the defendants did not depose Parisi and Massengill regarding Sonique's claim for damages, we are not persuaded that any evidence about such a claim would have altered the reasonable royalty selected by the jury. Sonique's only "claim" for damages is measured by Mentor's claim for damages. Sonique's only sales were to Mentor." *Id.* Similarly, here, the damages claims would not be altered by Chic's joinder. Chic's claim for damages is measured by Aspex's claim for damages, which in any event can be no less than a reasonable royalty.

Finally, if there is any party here who has unduly delayed – it would be Viva and Miracle, not plaintiffs. Indeed, Viva and Miracle have known at the outset that Chic was not a party, all agreements have been produced long ago, they have taken the deposition of Nonu Ifergan and the Rule 30(b)(6) deposition of Aspex regarding the corporate relationships between Contour, Chic, and Aspex -- yet they decided to just now make the argument that Chic is a "necessary and indispensable party" and that the entire action must be dismissed.[11] Viva and Miracle offer no cognizable explanation for their dilatory conduct in this regard.

## VI.   CONSOLIDATION OF THE PRESENT CASE WITH THE '096 ACTION MOOTS ALL THE ISSUES RAISED BY VIVA

---

[11]   The Federal Circuit's opinion on appeal makes no mention of any requisite determination regarding **indispensability** that would require dismissal of the case, only that "[w]e leave it to the district court to determine whether Chic, if it was a **necessary party** to this action, **could have** been joined." *Aspex Eyewear,* 434 F.3d at 1344 (emphasis added). "Indispensability" is only reached if joinder is not feasible. Here, it is feasible. *See Peabody W. Coal Co.*, 400 F.3d at 779 ("[i]f joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an "indispensable party" such that the action must be dismissed.").



1   If the court consolidates the present case with related case *Aspex Eyewear,*
2   *Inc. et al. v. Miracle Optics, Inc. et al.*, Case No. CV 04-01096 MMM-CWx and
3   sets a discovery schedule that would permit Viva to take the discovery that it
4   identified twice in the joint reports, all of the issues raised by Viva in its Motion,
5   including its claim of prejudice, become moot.

6   The district court has broad discretion under Fed. R. Civ. Proc. Rule 42(a) to
7   consolidate cases pending in the same district. *See, Investors Research Co. v. U.S. Dist.*
8   *Court for Cent. Dist. of California,* 877 F.2d 777 (9th Cir. 1989); Fed. R. Civ. Proc
9   42(a). In that regard, Fed. R. Civ. Proc. Rule 42(a) provides: "When actions involving
10  a common question of law or fact are pending before the court, it may order a joint
11  hearing or trial of any or all of the matters in issue in the actions; it may order all the
12  actions consolidated; and it may make such orders concerning proceedings therein as
13  may tend to avoid unnecessary costs or delay."

14  As noted above, on February 18, 2004, Contour, Aspex and Chic filed the
15  '096 action against Miracle and Viva, alleging infringement of the '747 patent.  The
16  '096 action and the present action involves the *same* parties (except Chic in the '096
17  action), the *same* patent-in-suit, and the *same* questions of law and fact.
18  Thus, consolidating the '096 action and the present case and setting a discovery
19  schedule that would permit Viva to take discovery, would not only further judicial
20  efficiency by avoiding unnecessary duplication of evidence and re-litigation of the
21  same issues, but also would moot all issues raised by Viva in its Motion.

22  **VII.   CONCLUSION**
23  For all of the above reasons, Defendants' motion should be denied.

25  DATED:  June 15, 2009          By:  /s/ Michael A. Nicodema
26  Michael A. Nicodema (*pro hac vice*)
    GREENBERG TRAURIG LLP
27
28  Jon E. Hokanson (State Bar #118829)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Josephine Brosas (State Bar # 239342)
LEWIS BRISBOIS BISGAARD
& SMITH LLP
Telephone (213) 680-5050

Attorneys For Plaintiffs



# FEDERAL COURT PROOF OF SERVICE

*Aspex Eyewear, Inc. et al. v. Miracle Optics, Inc. and Viva Optique, Inc.* Case No. CV 01-10396 MMM-CWx - File No. 28450-03

STATE OF CALIFORNIA, COUNTY OF Los Angeles

At the time of service, I was over 18 years of age and not a party to the action. My business address is 221 North Figueroa Street, Suite 1200, Los Angeles, California 90012. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On June 15, 2009, I served the following document(s): **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR INFRINGEMENT OF U.S. PATENT NO. 6,109,747**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

Michael A. Painter
ISAACMAN, KAUFMAN &
PAINTER
8484 Wilshire Boulevard, Suite 850
Beverly Hills, CA 90211
Telephone (323) 782-7700
Facsimile (323) 782-7744

Jeffrey A. Schwab
Anthony J. DiFilippi
ABELMAN, FRAYNE & SCHWAB
666 Third Avenue
New York, New York 10017
Telephone (212) 949-9022
Facsimile (212) 949-9190

The documents were served by the following means:

☒   (BY COURT'S CM/ECF SYSTEM)  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 15, 2009, at Los Angeles, California.

/s/ Josephine Brosas
Josephine Brosas


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4848-5615-9491.1

27

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR INFRINGEMENT OF U.S. PATENT NO. 6,109,747