1 | Michael A. Nicodema (*pro hac vice*)
GREENBERG TRAURIG, LLP
2 | 200 Park Avenue
New York, New York 10166
3 | Telephone (212) 801-2100
Facsimile (212) 688-2449

4 |

5 | Jon E. Hokanson (State Bar #118829)
Josephine Brosas (State Bar # 239342)
LEWIS BRISBOIS BISGAARD & SMITH LLP
6 | 221 N. Figueroa Street, Suite 1200
Los Angeles, CA 90012
7 | Telephone (213) 680-5050
Facsimile (213) 250-7900

8 |

Attorneys for Plaintiffs ASPEX EYEWEAR, INC, et al.

9 |

10 | **UNITED STATES DISTRICT COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA**

12 | ASPEX EYEWEAR, INC.,
MANHATTAN DESIGN STUDIO,
13 | INC., CONTOUR OPTIK, INC., and
ASAHI OPTICAL CO., LTD.,

Case No. CV 01-10396 MMM (CWx)

The Hon. Margaret M. Morrow
Courtroom 780 (Roybal)

14 |

15 | Plaintiffs,

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS PLAINTIFF ASPEX
EYEWEAR, INC. FOR LACK OF
STANDING TO SUE FOR
INFRINGEMENT OF U.S. PATENT
NO. RE 37,545**

16 | v.

MIRACLE OPTICS, INC., AND
17 | VIVA OPTIQUE, INC.

18 | Defendants.

Date:        July 13, 2009
19 | Time:        10:00 a.m.
Courtroom: 780 (Roybal)

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |



4849-1455-2067.1

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .................................................................................1

II. BACKGROUND FACTS.....................................................................2

    A.  The Findings Of The Court In *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, Case No. CV-1087 VAP-CWx ("the '087 action")........2

    B.  The April 7, 1998 Contour-Chic Agreement ..........................................5

    C.  The November 8, 2002 Contour-Chic Agreement .................................7

    D.  The January 1, 2003 Chic-Aspex Agreement .......................................7

    E.  The Findings Of The Federal Circuit  in Aspex Eyewear, Inc. et al. v.  Altair Eyewear, Inc.................................................................8

III. COLLATERAL ESTOPPEL DOES NOT APPLY .............................9

IV. ASPEX HAD STANDING TO SUE FOR INFRINGEMENT OF THE '545 PATENT AT THE TIME IT FILED THE AMENDED COMPLAINT .........................................................................11

    A.  Contour, As A Patent Co-Owner, Granted Chic A Co-Exclusive License, Transferring Only The Rights Contour Possessed .................11

    B.  Contour Did Not Grant Chic A "Bare" License......................................12

    C.  Aspex Was An Exclusive Licensee At The Time The Amended Complaint Was Filed_................................................................14

V.  CONCLUSION.....................................................................................15


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ASPEX EYEWEAR, INC. RE: U.S.
PATENT NO. RE37,545

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

*Aspex Eyewear, Inc.*
    434 F.3d at 1344.................................................................14, 15

*Baltimore & Ohio R.R. v. United States*
    261 U.S. at 597..........................................................................15

*Bird v. Lewis & Clark College*
    303 F.3d 1015............................................................................10

*Continental American Corporation v. Barton*
    932 F.2d 981..............................................................................11

*Dunham v. Indianapolis St. Louis R.R. Co.*
    8 F.Cas. 44.................................................................................12

*H.R. Techs. v. Astechnologies, Inc.*
    275 F.3d 1378............................................................................10

*L. A. County Bar Association v. Eu*
    979 F.2d 697..............................................................................10

*McGuckin v. Smith*
    974 F.2d 1050............................................................................10

*Media Techs. Licensing, LLC v. Upper Deck Co.*
    334 F.3d 1366............................................................................10

*Prima Tek II L.L.C. v. A-Roo Co.*
    222 F.3d 1372............................................................................13

*Richey v. United States Internal Revenue Service*
    9 F.3d 1407...........................................................................10, 11

*Rite Hite Corp. v. Kelley Co., Inc.*
    56 F.3d 1538......................................................................6, 7, 13



PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ASPEX EYEWEAR, INC. RE: U.S. PATENT NO. RE37,545

*Scott v. Pasadena Unified Sch. District,*
     306 F.3d 646..................................................................................................10

*Waymark Corp. v. Porta Systems Corp.,*
     334 F.3d 1358................................................................................................14

*Weinar v. Rollform, Inc.,*
     744 F.2d 797 (Fed. Cir. 1984), *cert. denied,* 470 U.S. 1084 (1985).............14

### DOCKETED CASES

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,*
     Case No. CV-1087 ..........................................................................................1

### FEDERAL STATUTES

35 U.S.C. § 262 ......................................................................................................12



PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ASPEX EYEWEAR, INC. RE: U.S.
PATENT NO. RE37,545

1  Pursuant to the Court's Minute Order of April 20, 2009 ("Order"), plaintiffs
2  ASPEX EYEWEAR, INC. ("Aspex"), MANHATTAN DESIGN STUDIO, INC.
3  ("MDS") and CONTOUR OPTIK, INC. ("Contour")(collectively, "Plaintiffs") hereby
4  submit their Opposition to defendant MIRACLE OPTICS, INC. and VIVA OPTIQUE,
5  INC.'s (collectively "Defendants" or "Viva") Motion to Dismiss Aspex Eyewear, Inc.
6  for Lack of Standing to Sue to Enforce and Defend U.S. Patent No. RE 37,545.

7  **I.    INTRODUCTION**

8  Defendants' motion on the issue of Aspex's standing to sue for infringement of
9  U.S. Patent No. RE 37,545 ("the '545 patent") rests on two grounds: (1) collateral
10 estoppel based on the Court's prior order in another case, *Revolution Eyewear, Inc. v.*
11 *Aspex Eyewear, Inc.*, Case No. CV-1087 VAP-CWx ("'087 action"), dismissing Aspex;
12 and (2) the record in this case that, according to Defendants, demonstrates that Aspex
13 did not have standing to sue at the time it filed the amended complaint on April 9, 2002.
14 However, as will be shown below, neither ground has merit.

15 First, with respect to the collateral estoppel issue, it is well-settled under
16 established Ninth Circuit law that a dismissal for lack of standing is not a final
17 judgment *on the merits*. In addition, collateral estoppel does not apply whereas here, the
18 issue in dispute, i.e., whether Aspex has standing to enforce the '545 patent as of the
19 filing of the complaint, is not identical as that presented in the *Revolution* case.

20 Second, Defendants do not dispute that Aspex had co-plaintiff standing to sue
21 under the original complaint for the '207 patent.  As a result, their argument that the
22 amended complaint divested Aspex of the standing to maintain this action as a co-
23 plaintiff for infringement of the '545 patent and thereby should be dismissed fails.  In
24 addition, as we show below the documents, declarations and circumstances presented
25 demonstrate that Aspex has maintained standing to throughout this action.  Additional
26 testimony and declarations along with agreements showing that in addition to the
27 exclusive written agreements to practice the '545 patent, the parties also had implied
28 exclusive agreements to exclude others from practicing the '545 patent.  We will show

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  below that when the amended complaint was filed, Aspex was an exclusive licensee
2  possessing co-exclusive rights (along with Pentax, then co-owner of the '545 patent
3  with Contour) to practice <u>and</u> to exclude others from practicing the patented invention
4  under the '545 patent.  Also, subsequent to the filing of the amended complaint, Aspex
5  became a <u>co-owner</u> of the '545 patent.  As such Aspex had and continues to have
6  standing to enforce the patent against Miracle and Viva in this action.  Moreover,
7  Contour and Pentax, as co-owners of the '545 patent, had standing to sue at the
8  inception of this lawsuit and at the time the amended complaint was filed, and Aspex
9  purchased Pentax's undivided one-half interest in the patent four months after filing.
10  There is no standing defect.

11      Accordingly, as discussed in detail below, Defendants' motion to dismiss Aspex
12  should be denied.

13  **II.    BACKGROUND FACTS**[1]

14      Below are the pertinent facts on the written agreements, the parties' intentions
15  and understanding, and the course of dealing between the parties with respect to the
16  '545 patent and the '207 patent.

17      **A.    The Findings Of The Court In _Revolution Eyewear, Inc. v. Aspex_**
18          **_Eyewear, Inc._, Case No. CV-1087 VAP-CWx ("the '087 action")**

19      Evidence of the parties' course of dealings and the way they have conducted
20  business through the years was considered by the Court during the damages trial in the
21  '087 Action[2].  _See_ Order Denying Counterclaim Defendant's Motions for Judgment as

22
23  ───────────────
24      [1]  Plaintiffs incorporate by reference the "Procedural History" set forth in Plaintiffs'
      Opposition to Defendants' Motion to Dismiss Plaintiffs' Claims for Infringement of
25  U.S. Patent No. 6,109,747 filed concurrently herewith.

26      [2]  The Court in the '087 action did not consider this evidence in dismissing Aspex
      because this was presented during the damages trial -- after Aspex had already been
27  dismissed.

28



1 | a Matter of Law, For New Trial, and For Remittitur, p. 18, lns. 1-13, Exh. 1 to Brosas
2 | Decl. Specifically, the Court found that "Contour presented testimony that it granted an
3 | exclusive license for its '207 patent to Chic Optic, and that when the '207 patent was
4 | reissued as the '545 patent, **Contour and Chic treated the agreement as a continuing**
5 | **license of the '545 patent**." *Id.* (emphasis added).

6 | The Court accepted into evidence and considered the following trial testimony
7 | from Contour's principal, David Chao:

8 |
9 | Q: Now as of the time the '545 patent issued, had Contour
10 | authorized anyone to market products for it under that patent?

11 | A: Chic Optik.

12 | Q: How long has Chic Optic marketed products for Contour
13 | under the '545 patent?

14 | A: Since the date that the '545 patent issued. Again, when the
15 | '545 patent was issued and the '207 patent was no longer in
16 | existence. **So there is no way to operate other than to**
17 | **treat 545 as a continuation of the license agreement**
**between Contour and Chic.**

18 | Q: Has Contour ever authorized anyone but Chic to market
19 | products under the '545 patent?

20 | A: Never.

21 | Q: Why is that?
22 |

23 | A: Well, Contour and Chic Optic has [sic] been working
24 | together since 1996 and there has been a very long and
trustful relationship. Besides, Contour has signed an
25 | exclusive licensing agreement with Chic in 1998 and the
agreement would not expire until March 2003 and, therefore,
26 | there is no way and no reason for Contour to try to find
27 | somebody else to license the now '545 patent.

28 |


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

2

> Q:    As of the date of the '545 issued [sic], were you considering potential other licensees under that patent in addition to Chic?

3

4

5

> A:    I don't know how I could.  The intent of the party has always been – well, the intent as well as, again, the 1998 agreement.

6

> ***

7

> Q:    Did Contour ever authorize Chic to enforce the '545 Patent?

8

9

10

> A:    In the 1998 agreement with Chic that Contour has given Chic the right to enforce the patent and we always operate under the spirit that Chic is allowed to take legal action.

11

12

*See* Exh. 2 to Brosas Decl., '087 action 9/18/2007 Trial Transcript, 43:25-45:14 (emphasis added).

13

14

The Court also accepted into evidence and considered the following trial testimony from Aspex's Vice President, Thierry Ifergan:

15

16

> Q.    Are you familiar with the '545 Patent in this case?

17

> A.    I am.

18

19

> Q.    Has MDS and Aspex ever distributed products for Contour in the United States under that patent?

20

> A.    Yes.

21

> Q.    For how long have your companies been doing this?

22

23

> A.    MDS and Aspex from the inception, **right from the inception of the '545, from the issue of the '545 Patent.**

24

25

> Q.    How would you describe the working relationship with Contour?

26

27

28

> A.    Phenomenal.  I couldn't have the same kind of relationship with all of the people that I work with because it would be too good.



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4837-8425-2675.1

4

> Q.   Now, we know that Aspex markets product for Contour under the '545 Patent.  Under what brands does Aspex do that?
>
> A.   Aspex does it under the brand Easy Clip and Cool Clip.

*See* Exh. 3 to Brosas Decl.,'087 action 9/19/07 (Vol. II) Trial Transcript, 26:15-27:5.

## B.   The April 7, 1998 Contour-Chic Agreement

On April 7, 1998, Contour and Chic entered into a "Distribution and License Agreement" under U.S. Patent No. 5,568,207 (the "'207 patent"), the '545 patent's predecessor.  See Exh. A to the Declaration of Nonu Ifergan.

Under the terms of the April 7, 1998 Distribution and License Agreement, Contour appointed Chic "its exclusive licensee throughout the Territory [the United States] to make, use, import, sell and distribute frames covered by the claims of the ['207 patent]" (Exh. A at ¶ 4.1).  Contour further agreed that it would: (1) "[n]ot market, sell or distribute any frames in the Territory, save and except through Chic"; and (2) "[t]ake all necessary steps to ensure that none of [its] distributors sell any Frames in the Territory" (Exh. A at ¶¶ 7.5-7.6).  The express intent of these provisions was to make sure that Chic would have the exclusive right to market, sell and distribute eyewear made under the '207 patent in the United States and the exclusive right to exclude others from marketing, selling and distributing eyewear made under the '207 patent.

From at least as early as the April 7, 1998 effective date of the Distribution and License Agreement, Chic transferred to Aspex its exclusive right to market, sell and distribute products made in accordance with the '207 patent in the United States; and Chic agreed not to market, sell or distribute such products in the United States except through Aspex.  This has always been the course of dealing between Contour, Chic and Aspex during the time the '207 patent was in effect; and Contour has always been aware of and approved this licensing arrangement. Ifergan Decl., ¶11.  The Court in the '087 action found that through this agreement, "Chic thus obtained rights that are

1   critical to any exclusive license, i.e., the 'right to practice the invention within a given

2   territory' and 'the patentee's express or implied promise that others [would] be

3   excluded from practicing the invention within that territory . . ." citing to *Rite Hite*

4   *Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1551 (Fed. Cir. 1995).

5         That course of dealing between Contour, Chic, and Aspex under the '207 patent

6   continued even after the '207 patent was reissued on February 12, 2002 as the '545

7   patent and such course of dealing continues to this day.  Aspex has not stopped its

8   marketing of magnetic eyewear covered by the '207 patent and the '545 patent after the

9   reissuance.  No other entity has been considered as a prospective licensee of Chic's

10  rights under the '545 patent. *See* Ifergan Decl., ¶12; Chao Decl., ¶8.

11        Consistent with that course of dealing, it was and always has been Chic's

12  intention to receive from Contour as soon as the '545 patent was reissued on February

13  12, 2002 the exclusive rights that Contour had <u>as co-owner of the '545 patent</u> (at that

14  time, the '545 patent was co-owned by Asahi Optical Co., Ltd. ("Pentax")).  In other

15  words, <u>co-exclusive rights</u> owned by Contour were transferred to Chic. *See* Ifergan

16  Decl., ¶13; *see also* Chao Decl., ¶9.

17        The parties believed and understood that Contour's rights under the '545 patent

18  that were granted to Chic were a co-exclusive right to make, use, offer for sale and sell

19  in the United States, and a co-exclusive right to exclude and prevent others from

20  making, using, offering for sale and selling in the United States products covered by the

21  claims in the '545 patent.  Chic and Contour have always operated and acted

22  consistently with this understanding. *See* Ifergan Decl., ¶¶14, 24-26; *see also* Chao

23  Decl., ¶¶10, 15-18.

24        Moreover, Chic intended to immediately convey and transfer to Aspex any

25  intellectual property rights in the United States acquired by Chic, including the co-

26  exclusive right to practice the patented invention under the '545 patent and the co-

27  exclusive right to exclude others from practicing the patented invention that Chic

28  received from Contour. *See* Ifergan Decl., ¶15; *see also* Chao Decl., ¶10.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

C.      **The November 8, 2002 Contour-Chic Agreement**

On November 8, 2002, Contour, Chic, and Aspex executed an updated written "Patent Distribution and License Agreement", reflecting their understanding, operations, and course of dealing as outlined above. *See* Exh. B to Ifergan Decl. *See* Ifergan Decl., ¶¶16-20; *see also* Chao Decl., ¶¶11-15.

D.      **The January 1, 2003 Chic-Aspex Agreement**

Consistent with the parties' intentions and with the way in which Chic and Aspex actually conducted their businesses, on January 1, 2003, Chic and Aspex memorialized what their principals always intended and how the two companies had always conducted business with each other. *See* Ifergan Decl., ¶21, Exh. C.

The January 1, 2003 Chic-Aspex Agreement, which provides that "Whereas Licensee [Aspex] and Licensor [Chic] are desirous of memorializing such agreement, vesting in the Licensee the rights of the Licensor for any and all current and future rights relating to magnetic eyewear under the Licensor's Agreements", confirmed that Chic's exclusive right to practice the invention and the exclusive right to exclude others from making, using, offering for sale and selling in the United States products covered by the claims in the '545 patent had been transferred to Aspex. This is what the parties intended and understood. *See* Ifergan Decl., ¶¶21-23. Indeed, the January 1, 2003 Chic-Aspex Agreement simply updated and recorded how Chic and Aspex had conducted their businesses before the January 1, 2003 effective date. Ifergan Decl., ¶23.

At all times during the relationship and course of dealing between Contour, Chic, and Aspex, these companies have always conducted business as if Chic had received from Contour its co-exclusive right to practice the invention <u>and</u> its co-exclusive right to exclude others from practicing the patented inventions, in conformity with the intention and understanding of the parties. This was before as well as after the '545 patent was issued. *See* Ifergan Decl., ¶24; Chao Decl., ¶17.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Also, at all times during the relationship and course of dealing between Chic and

2  Aspex, these companies acted as if the co-exclusive rights Chic received from Contour

3  under the '545 patent were immediately transferred to Aspex. *See* Ifergan Decl., ¶25.

4  Chic has never granted to any person or entity, other than to Aspex, any of its co-

5  exclusive rights to practice the invention covered by the claims in the '545 patent and

6  has never granted to any person or entity, other than to Aspex, its co-exclusive right to

7  exclude others from practicing the invention.  *See* Ifergan Decl., ¶26.

8  Aspex has never granted to any person or entity any of its co-exclusive rights to

9  practice the invention covered by the claims in the '545 patent and has never granted to

10 any person or entity its co-exclusive right to exclude others from practicing the

11 invention. *See* Ifergan Decl., ¶27.

12 **E.    The Findings Of The Federal Circuit  in Aspex Eyewear, Inc. et al.**

13 **v.  Altair Eyewear, Inc.**

14 In an analogous case involving some of the same issues presented here, *Aspex*

15 *Eyewear, Inc. et al. v.  Altair Eyewear, Inc.,* 288 Fed. Appx. 697 (Fed. Cir. 2008), the

16 Federal Circuit found that the facts and circumstances relating to the relationships in

17 question were "sufficient to establish a genuinely disputed issue of material fact as to

18 whether Aspex had an oral or implied exclusive license" to confer co-plaintiff standing.

19 In particular the Federal Circuit found that:

20     •   Chic and Aspex are both owned by members of the same family

21         and have a close business relationship.

22     •   Aspex has operated as an exclusive licensee, distributing products

23         made pursuant to the patents-in-suit and seeking to enforce its

24         rights under the patents.

25     •   Thierry Ifergan, a member of the family that owns both Chic and

26         Aspex, testified that oral and implied agreements exist and grant

27         Aspex an exclusive license in the patents-in-suit.

28 *See* 288 Fed. Appx. 697, 706.  The Federal Circuit also found that "in addition to the

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ASPEX EYEWEAR, INC. RE: U.S.
PATENT NO. RE37,545

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  above, Nonu Ifergan, another member of the family that owned both Chic and Aspex,

2  testified that both companies believed the written license agreement conferred an

3  exclusive license to the patents-in-suit[3] **and operated consistent with that**

4  **understanding.**" *Id.*(emphasis added).  The same is true here.

5  ### III.   COLLATERAL ESTOPPEL DOES NOT APPLY

6      Defendants argue that Plaintiffs here should be collaterally estopped by the

7  Court's dismissal of Aspex in the '087 action for lack of standing.  This argument

8  should be rejected outright because collateral estoppel does not apply to dismissals for

9  lack of standing.   "To be given preclusive effect, a judgment must be a final

10  adjudication of the rights of the parties and must dispose of the litigation on the merits".

11  See 18A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4427, at 4-

12  5 (2d ed. 2002). The Ninth Circuit, in common with other federal courts, recognizes

13  that standing is a threshold question that must be resolved before proceeding to the

14  merits of a case.  *L. A. County Bar Ass'n v. Eu*, 979 F.2d 697, 700 (9th Cir. 1992).

15      In *Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1370 (Fed.

16  Cir. 2003), the Federal Circuit (applying Ninth Circuit law) noted that "[b]ecause

17  standing is jurisdictional, lack of standing precludes a ruling on the merits. Thus, the

18  district court erred in giving preclusive effect to the Telepresence judgment because its

19  dismissal of Telepresence's complaint for lack of standing was not a final adjudication

20  of the merits." Citing to *Scott v. Pasadena Unified Sch. Dist.,* 306 F.3d 646, 653-54

21  (9th Cir. 2002) (stating that "we must establish jurisdiction before proceeding to the

22  merits of the case"); *Bird v. Lewis & Clark Coll.*, 303 F.3d 1015, 1019 (9th Cir. 2002)

23  (recognizing that before reaching the merits of the case, the court must determine the

24

25      [3] The *Altair* appeal involved different patents-in-suit, but the identical parties.
26  The facts relevant to that decision as they relate to the course of dealing between the
27  parties in creating an implied exclusive license for the purpose of co-plaintiff standing
    are the same.

28



1  threshold issue of standing); accord *H.R. Techs. v. Astechnologies, Inc.*, 275 F.3d 1378,

2  1384 (Fed. Cir. 2002) ("Because lack of standing is not an issue that goes to the merits

3  of the underlying patent issues, a dismissal of a complaint for lack of standing would

4  not normally be expected to be made with prejudice.").

5          Similarly, here, Aspex's dismissal for lack of standing in the '087 action was

6  *without prejudice*.   *See* Order Granting Counter-Defendants' Motion to Dismiss

7  Counterclaimant Aspex for Lack of Standing, p. 29, Exh. 1 to Schwab Decl. in support

8  of Motion.   There was no "final determination on the merits" and for this reason alone,

9  collateral estoppel is inapplicable.   Defendants' cited case *McGuckin v. Smith*, 974 F.2d

10  1050, 1053 (9th Cir. 1992) does not apply, because it involved a determination

11  regarding the appellate court's *jurisdiction over the appeal*, i.e., it only considered

12  *finality* of the district court's judgment for purposes of the prisoner-appellant's appeal.

13  *McGuckin* had nothing to do with the preclusive effect of a judgment in another action.

14          In addition, collateral estoppel does not apply whereas here, the issues presented

15  are different from those already decided in the *Revolution* case.   Because standing is

16  determined as of the commencement of the suit, the Court's analysis and determination

17  will depend on the particular facts of each case.   *See, Lujan v. Defenders of Wildlife,*

18  504 U.S. 555, 570 n. 5 (1992).   In addition, where "controlling facts or legal principles

19  have changed significantly since the prior judgment" collateral estoppel is not

20  applicable. *Richey v. United States Internal Revenue Service*, 9 F.3d 1407, 1410 (9th

21  Cir. 1993) quoting *Montana v. United States*, 440 U.S. 147, 155, 99 S. Ct. 970, 975, 59

22  L. Ed. 2d 210 (1979)).

23          Here, while the Court in the '087 action was presented with the specific question

24  as to whether Aspex had standing to sue under the '545 patent as of the filing of the

25  September 10, 2002 counterclaims.   In contrast, the question here is whether Aspex has

26  standing to maintain this action as a co-plaintiff where the amended complaint was filed

27  on April 9, 2002 and Viva does not dispute that Aspex had standing to sue as of the

28  filing of the original complaint.   In addition, collateral estoppel does not apply because:

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  (1) the Court in the '087 action did not have before it additional declarations showing

2  what the parties had actually intended and understood; (2) did not have the testimony of

3  the parties, which was considered by the Court during the '087 action damages trial;

4  and (3) did not have before it the Federal Circuit's 2008 opinion in *Aspex Eyewear,*

5  *Inc. et al. v. Altair Eyewear, Inc.*, 288 Fed. Appx. 697, 705 (Fed. Cir. 2008), where the

6  Federal Circuit considered Aspex's evidence of an implied license and held that "*[W]e*

7  *are bound to follow our precedent*, and thus we hold that *an exclusive license need not*

8  *be in writing for the licensee to have standing if the patentee or assignee is also*

9  *joined*, as Contour was here." (emphasis added).

10      For the above reasons, the doctrine of collateral estoppel simply does not apply.

11  **IV.    ASPEX HAD STANDING TO SUE FOR INFRINGEMENT OF THE**

12  **'545 PATENT AT THE TIME IT FILED THE AMENDED**

13  **COMPLAINT**

14      **A.    Contour, As A Patent Co-Owner, Granted Chic A Co-Exclusive**

15      **License, Transferring Only The Rights Contour Possessed**

16      Defendants' argument that a co-owner can never grant an exclusive license is

17  untenable as a matter of law.  Defendants argue that "Contour could not have granted

18  an exclusive license to Chic at the time the Amended Complaint was filed." Motion at

19  p. 13, lns.16-18.  Defendants' assertion misses the point.  While it is true that "a joint

20  owner of a patent cannot grant to a third party greater rights than the joint owner

21  himself possesses", *Continental American Corporation v. Barton,* 932 F.2d 981 (Fed.

22  Cir. Apr. 30, 1991), citing *Dunham v. Indianapolis  St. Louis R.R. Co.,* 8 F.Cas. 44

23  (N.D. Ill. 1876)("it is clear that one of the patentees cannot grant what does not belong

24  to him, and if he gives a license or makes a contract for the use of the thing patented, he

25  can only grant that which he has himself, and not the rights of other patentees . . ."),

26  Plaintiffs here are not claiming that Contour granted to Chic rights that belonged to its

27  co-owner, Pentax.  Rather, as shown by the evidence discussed above, Contour only

28  granted co-exclusive rights that it, as a co-owner, owned.  Plaintiffs are not in any way,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4837-8425-2675.1                                                11
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ASPEX EYEWEAR, INC. RE: U.S.
PATENT NO. RE37,545

Case 2:01-cv-10396-MMM-CW Document 390 Filed 06/15/09 Page 16 of 21

1  shape, or form making the claim that Contour granted exclusive rights to Chic that
2  would have precluded Pentax from exercising its co-ownership rights.

3      Indeed, Defendants' position is also contrary to and plainly ignores established
4  patent law and principles. It is black-letter law that patents may be co-owned; and that
5  joint patent owners may make, use, offer to sell, or sell the patented invention "without
6  the consent of and without accounting to the other owners." 35 U.S.C. § 262.

7      Furthermore, under long established law, a patentee or his assignee may grant
8  and convey to another: (1) the whole patent, (2) **an undivided part or share of that**
9  **exclusive right**, or (3) the exclusive right under the patent within and throughout a
10  specified part of the United States." *Isr. Bio-Engineering Project v. Amgen Inc.*, 475
11  F.3d 1256, 1264 (Fed. Cir. 2007)(emphasis added), citing to *Vaupel Textile KG v.*
12  *Meccanica Euro Italia, S.A.A.*, 944 F.2d 870, 873 (Fed. Cir. 1991)

13      Here, Contour transferred to Chic an undivided part or share of its co-exclusive
14  right to practice the invention with Pentax. This transfer resulted in Chic having co-
15  exclusive rights with Pentax. When the '545 patent was reissued on February 12, 2002,
16  Chic received from Contour exclusive rights that Contour (not Pentax) had as co-owner
17  of the '545 patent. In other words, co-exclusive rights owned by Contour (its own
18  undivided part or share of the exclusive right with Pentax) were transferred to Chic.

19      Thus, because Defendants' arguments are premised on this erroneous proposition
20  and interpretation of the law, Defendants' motion should be denied.

21      **B.  Contour Did Not Grant Chic A "Bare" License**

22      Defendants argue that Contour only granted Chic a "bare" license because
23  neither the April 7, 1998 Contour-Chic Agreement nor the November 8, 2002 Contour-
24  Chic Agreement includes the "right to practice the invention within a given territory"
25  nor "the patentee's express or implied promise that others [will] be excluded from
26  practicing the invention within that territory as well." Motion at p. 14, citing to *Rite-*
27  *Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995). However, in addition to
28  the written agreements that were directed to exclusive rights to practice the '545 patent,

4837-8425-2675.1                    12
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ASPEX EYEWEAR, INC. RE: U.S.
PATENT NO. RE37,545

1   these parties had implied agreements directed to the exclusive right to exclude others
2   from practicing the '545 patent.   As shown above, Contour, Chic and Aspex have
3   always conducted business consistent with Chic receiving from Contour its co-
4   exclusive right to practice the invention <u>and</u> its co-exclusive right to exclude others
5   from practicing the patented inventions, in conformity with the intention and
6   understanding of the parties. This was before as well as after the '545 patent was
7   issued. *See also*  Ifergan Decl., ¶¶24-25; Chao Decl., ¶¶16-17.

8         Defendants' own cited authority supports that Contour granted Chic an exclusive
9   license sufficient to later confer standing on Chic's licensee, Aspex.  Defendants cite to
10  *Prima Tek II L.L.C. v. A-Roo Co.,* 222 F.3d 1372, 1380 (Fed. Cir. 2000) ("A licensee's
11  right to sub-license is an important consideration in evaluating whether a license
12  agreement transfers all substantial rights.").  Here, both the April 7, 1998 Contour-Chic
13  Agreement and the November 8, 2002 Contour-Chic Agreement granted Chic the right
14  to sublicense. *See* ¶ 4.4 of the 1998 Agreement, Exh. A to Ifergan Decl. ("Contour
15  further grants Chic the right to grant sublicenses to sell Frames in the Territory
16  consistent wit this Agreement"); *See* ¶ 3.1(2) of the 2002 Agreement, Exh. B to Ifergan
17  Decl. ("Contour hereby grants to Chic an exclusive non-transferable license under the
18  Contour Patents including the right to  grant sublicenses to anyone including but not
19  limited to an Affiliate of Chic, to make or have made, use, offer for sale, and sell any
20  Licensed Products").

21        Finally, Defendants contend that because "the November 8, 2002 Contour-Chic
22  Agreement postdates the filing of Aspex's Amended Complaint . . . Aspex cannot
23  predicate standing to sue on that contract."  However, this contention ignores the fact
24  that this writing is not the only evidence in support of Aspex's standing to sue.  Aspex
25  does not base its standing merely on the November 8, 2002 Contour-Chic Agreement.
26  Rather, Aspex's standing as exclusive licensee is also predicated upon an implied
27  agreement of the parties by conduct, which, as noted above, has been specifically
28  recognized by the Federal Circuit as sufficient to establish standing.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**C.     Aspex Was An Exclusive Licensee At The Time The Amended Complaint Was Filed**

Aspex was an exclusive licensee at the time of the filing by virtue of: (1) an implied exclusive license between Chic and Aspex prior to the filing of the amended complaint, which was (2) memorialized in writing after the filing of the complaint; and (3) confirmed by the course of dealing between the parties before and after the filing of the complaint, and (4) such course of dealing has always been consistent with the existence of an implied excusive license and the intention of all parties involved.

The existence of an implied exclusive agreement between Chic and Aspex is supported by case law.  Indeed, the Federal Circuit, in *Aspex Eyewear, et al v. Miracle Optics, Inc.*, noted that "[d]etermining ***whether there was an implied license between Chic and Aspex*** prior to the filing of the complaint may involve a factual determination." 434 F.3d 1336, 1345 (emphasis added).   This is also supported by the Federal Circuit's holding in *Aspex Eyewear, Inc. et al. v.  Altair Eyewear, Inc.,* 288 Fed. Appx. at 705, where it held that "[W]e are **bound to follow our precedent,** and thus we hold that **an exclusive license need not be in writing for the licensee to have standing** if the patentee or assignee is also joined, as Contour was here."(emphasis added); *See, Waymark Corp. v. Porta Systems Corp.*, 334 F.3d 1358, 1364 (Fed. Cir. 2003)(stating patent "[l]icenses may be oral."); *See also, Weinar v. Rollform, Inc.,* 744 F.2d 797, 807 (Fed. Cir. 1984), *cert. denied,* 470 U.S. 1084 (1985)(the oral contract granting exclusive right to sell sufficient to confer co-plaintiff standing).   Indeed, consideration of the parties' intention, understanding, and course of dealing is particularly important in determining the existence of an implied exclusive license. *Baltimore & Ohio R.R. v. United States*, 261 U.S. at 597.

Here, as evidenced by the written agreements, intention and understanding of the parties, the history of the relationship and course of dealing between the parties, and the testimony of the parties in this regard discussed *supra*, demonstrate that Chic's exclusive right to practice the invention and the exclusive right to exclude others from



1   practicing the invention claimed by the '545 patent were transferred to Aspex when

2   Chic acquired those rights from Contour.  This gave Aspex co-plaintiff standing to sue

3   for infringement of the '545 patent as of the time the amended complaint was filed.

4           Specifically, the course of dealing between Contour, Chic, and Aspex under the

5   '207 patent continued even after the '207 patent was reissued on February 12, 2002 as

6   the '545 patent and such course of dealing continues to this day.  Aspex has not stopped

7   its marketing of magnetic eyewear covered by the '207 patent and the '545 patent after

8   the reissuance.  No other entity has been considered as a prospective licensee of Chic's

9   rights under the '545 patent. Consistent with that course of dealing, it was and always

10  has been Chic's intention to receive from Contour as soon as the '545 patent was

11  reissued on February 12, 2002 exclusive rights that it had as co-owner of the '545

12  patent. *See also* Testimony of David Chao in '087 action 9/19/07 (Vol. II) Trial

13  Transcript, 26:15-27:5, Exh. 2 to Brosas Decl.; *See also* Testimony of Thierry Ifergan

14  '087 action 9/18/2007 Trial Transcript, 43:25-45:14, Exh. 3 to Brosas Decl.

15          Accordingly, for all of the above reasons, and in accordance with the Federal

16  Circuit's recognition that Aspex can be "an exclusive licensee with the right to sue, []

17  ***through an implied license"*** (*Aspex Eyewear, Inc.* 434 F.3d at 1344), Plaintiffs

18  respectfully submit that Aspex indeed was an exclusive licensee with the right to sue,

19  and thus had co-plaintiff standing to sue along with patentee Contour and former co-

20  patentee Pentax when this lawsuit was filed.

21  **V.      CONCLUSION**

22          For all of the above reasons, Defendants' motion should be denied.

23

24  DATED:  June 15, 2009           By: /s/ Michael A. Nicodema

25                                       Michael A. Nicodema (*pro hac vice*)

26                                       GREENBERG TRAURIG LLP
                                         200 Park Avenue

27                                       New York, New York 10166

28                                       Telephone (212) 801-2100

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4837-8425-2675.1

15

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ASPEX EYEWEAR, INC. RE: U.S.
PATENT NO. RE37,545

1

2      Jon E. Hokanson (State Bar #118829)
       Josephine Brosas (State Bar # 239342)
3      LEWIS BRISBOIS BISGAARD
       & SMITH LLP
4      221 N. Figueroa Street, Suite 1200
5      Los Angeles, CA 90012
       Telephone (213) 680-5050
6      *Attorneys For Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



4837-8425-2675.1

16

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ASPEX EYEWEAR, INC. RE: U.S.
PATENT NO. RE37,545

**FEDERAL COURT PROOF OF SERVICE**
*Aspex Eyewear, Inc. et al. v. Miracle Optics, Inc. and Viva Optique, Inc.* Case No.
CV 01-10396 MMM-CWx - File No. 28450-03

STATE OF CALIFORNIA, COUNTY OF Los Angeles

At the time of service, I was over 18 years of age and not a party to the action. My business address is 221 North Figueroa Street, Suite 1200, Los Angeles, California 90012.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On June 15, 2009, I served the following document(s):**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF ASPEX EYEWEAR, INC. FOR LACK OF STANDING TO SUE FOR INFRINGEMENT OF U.S. PATENT NO. RE 37,545**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

Michael A. Painter
ISAACMAN, KAUFMAN &
PAINTER
8484 Wilshire Boulevard, Suite 850
Beverly Hills, CA 90211
Telephone (323) 782-7700
Facsimile (323) 782-7744

Jeffrey A. Schwab
Anthony J. DiFilippi
ABELMAN, FRAYNE & SCHWAB
666 Third Avenue
New York, New York 10017
Telephone (212) 949-9022
Facsimile (212) 949-9190

The documents were served by the following means:

☒ (BY COURT'S CM/ECF SYSTEM)  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on June 15, 2009, at Los Angeles, California.

/s/ Josephine Brosas
Josephine Brosas



4837-8425-2675.1
1
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ASPEX EYEWEAR, INC. RE: U.S. PATENT NO. RE37,545